[Civ. No. 1931.   Third Appellate District.—February 27, 1919.]

S. J. IRWIN, etc., Appellant, v. JOHN SILVA et al., Defendants; JOHN EMRICK, Respondent.

[1] Mechanic's Lien—Time for Filing Claim—Construction of Section 1187, Code of Civil Procedure.—Under section 1187 of the Code of Civil Procedure, where work is done under contract between the owner of the property upon which an improvement is made and the contractor, persons furnishing either labor or material may, at their option, file their claims of lien, either within thirty days after ceasing to labor or to furnish materials, or within thirty days after the completion of the original contract between owner and contractor; but where the work is not done under such a contract, laborers and materialmen must file their liens within thirty days after they have ceased to labor or to furnish materials.

[2] ID.—IMPROVEMENTS MADE BY OWNER HIMSELF — ESTOPPEL NOT APPLICABLE.—Where the improvements are not made under contract, but by the owner himself, either actually or constructively, the provisions of section 1187 of the Code of Civil Procedure, as to the filing of notice of completion, do not apply, and the estoppel raised by the latter part of that section, where there is a default on the part of the owner to file such notice, cannot be invoked by a laborer or a materialman.

APPEAL from a judgment of the Superior Court of San Joaquin County. M. D. Young, Judge. Affirmed.

The facts are stated in the opinion of the court.

Gordan A. Stewart for Appellant.

Webster, Webster & Blewett for Respondent.

HART, J.—The action was brought to foreclose a mechanic's lien on certain property belonging to the defendant, John Emrick. The land was under lease to defendant, John Silva, who obtained from plaintiff lumber and material which he used in constructing certain buildings for his own use. Defendant Silva defaulted, judgment was in favor of defendant Emrick, and the appeal is by plaintiff, on the judgment-roll, from said judgment.

It was found by the court: That between the fifth day of June, 1915, and the sixteenth day of November, 1915, plaintiff sold and delivered to defendant Silva lumber and materials which were used by him in the erection of certain buildings; that said buildings were constructed by defendant Silva with the knowledge of the defendant Emrick; that during the course of construction of said buildings and before they were completed portions of them were occupied by defendant Silva. "That the defendant, John Silva, continued to work intermittently in and about said buildings and improvements up to the fourth day of December, 1915, at which time said buildings were completed. That said buildings were constructed by said John Silva in person and not by a contractor. That on the eighth day of February, 1916, and within ninety days after the last delivery of said lumber and building material and the completion of said buildings," plaintiff filed a claim of lien. "That no notice was ever filed by the defendants, or either of them, . . . setting forth the date when said buildings were

completed, or any of the facts required to be set forth in section 1187 of the Code of Civil Procedure; . . . that the defendant, John Emrick, knew at all times that said buildings were in the course of construction, and he at no time gave notice that he would not be responsible for any bills incurred in the delivery of said lumber.''

As conclusion of law the court declared: That $540.45 was due plaintiff from defendant Silva, but ''that the plaintiff is not entitled to a decree against the defendant, John Emrick, establishing a lien upon the lands and premises of the said John Emrick in satisfaction of the judgment of the plaintiff against the defendant, John Silva . . . by reason that said claim of lien is null and void and of no force and effect, not having been filed within the time required by law.''

The only question presented for our decision is, What time has a materialman in which to file a claim of lien for materials furnished and used in the construction of a building where it is not constructed under contract?

Section 1187 of the Code of Civil Procedure provides: ''Every original contractor, claiming the benefit of this chapter, within sixty days after the completion of his contract, and every person save the original contractor claiming the benefit of this chapter, within thirty days after he has ceased to labor or has ceased to furnish materials, or both; or at his option, within thirty days after the completion of the original contract, if any, under which he was employed, must file for record . . . a claim of lien. . . . Any trivial imperfection in the said work, or in the completion of any contract by any lien claimant, or in the construction of any building, . . . shall not be deemed such a lack of completion as to prevent the filing of any lien; and, in all cases, any of the following shall be deemed equivalent to a completion for all the purposes of this chapter: the occupation or use of a building . . . by the owner, or his representative; or the acceptance by said owner . . . of said building, . . . or cessation from labor for thirty days upon any contract or upon any building, . . . or the alteration, addition to, or repair thereof; the filing of the notice hereinafter provided for. The owner may within ten days after completion of any contract, or within forty days after cessation from labor thereon, file for record . . . a notice setting forth the date when the same was completed, or on which cessation from labor occurred. . . . In case such notice

be not so filed then the said owner and all persons deraigning title from or claiming any interest through him shall be estopped in any proceedings for the foreclosure of any lien provided for in this chapter from maintaining any defense therein based on the ground that said lien was not filed within the time provided in this chapter; provided, that all claims of lien must be filed within ninety days after the completion of any building . . . or the alteration, addition or repair thereto.''

It will be observed that the lien was filed after sixty but within ninety days after the time at which the court finds that the buildings were completed. But the plaintiff relies upon and invokes the estoppel created by the latter part of section 1187, where there is default on the part of the owner of land upon which a building has been erected to file for record within the time prescribed by the section a notice setting forth the date when the same was completed, or on which cessation of labor occurred. On the other hand, the respondent contends, and upon that theory the court below decided the case, that the estoppel raised by said section has no application to a case where, as is the claim here, the building is not constructed or the improvement made under a contract. In other words, it is contended that the estoppel referred to is not available to the claimant where the building is constructed or the improvement is made by the owner of the land himself, either actually or constructively.

The position of counsel for the respondent, as above stated, follows from their construction of the following portion of said section, or from the signification they ascribe to the word ''contract'' as employed therein: ''The owner may within ten days after completion of *any contract*,'' etc., implying, as is the theory, that the estoppel which follows from the failure of the owner to file the notice prescribed has relation to a contract, and that, unless, therefore, the work is done under a contract the estoppel cannot be made available as against the defense by the owner that the lien has not been filed within the time fixed by said section.

No case has been cited, and, after some independent research, we have found none, in which the precise question presented here has ever been considered and decided by any of the appellate courts of this state. We are, therefore, driven to a determination of the problem submitted entirely by what

we consider to be a reasonable construction of the language of section 1187 of the Code of Civil Procedure.

Counsel for the appellant, as in support of his contention as to the meaning and scope of that portion of said section which relates to the estoppel, lays particular stress upon the proposition that it is thereby provided that the estoppel shall apply to "*any* proceedings for the foreclosure of *any* lien provided for *in this chapter.*" It is argued that this language clearly implies that the estoppel is applicable in any proceedings for the foreclosure of any lien authorized by any section or provision embraced within the chapter of the code relating to the liens of mechanics, laborers, materialmen, etc., and, therefore, may be invoked as well in a case where the work has not been done under a contract as in a case where the work has been done under a contract. But whether this argument be sound or not must be determined from an ascertainment of the meaning of the preceding language of the section. The language "shall be estopped in any proceedings for the foreclosure of any lien provided for in this chapter" obviously means, not necessarily all liens "provided for in this chapter," but any lien "provided for in this chapter" as to which it was the legislative intent that the estoppel might be invoked; so, after all, we are, as stated, required to turn to the language itself providing for the estoppel to ascertain in what cases the estoppel may be relied upon by a lien claimant. And in getting at the true meaning of the provision as to the estoppel—that is, to ascertain in what cases the legislature intended that the estoppel may be invoked—we will be greatly assisted by an examination of the preceding parts of said section and other provisions of the lien law.

[1] It is important to note the initial language of section 1187, viz.: "Every original contractor, claiming the benefit of this chapter, within sixty days after the completion of his contract, and every person save the original contractor claiming the benefit of this chapter, within sixty days after he has ceased to labor, or has ceased to furnish materials, or both; or at his option, within thirty days after the completion of the original contract, *if any,* under which he was employed, must file for record," his lien, etc. It seems to us to be perfectly plain that that language was intended to mean that, in the case of any work being done under a contract between the owner of the property upon which the improvement is to be

made and a contractor, the persons furnishing either labor or materials in such case may, at their election, select one of two alternatives as to the time of filing their liens for the same, to wit, either within thirty days after they have ceased to labor or to furnish materials or within thirty days after the completion of the original contract between the owner and the contractor, but that where the work is not done by or under such a contract—as, for instance, where the work is done by the owner of the property himself, either actually or presumptively, laborers and materialmen must file their liens within thirty days after they have ceased to labor or ceased to furnish materials. That the second alternative or option was not intended to apply to the latter class, is, it seems to us, indubitably shown by the use of the words, "if any," immediately preceding the words, "original contract." The phrase, "if any," as so employed, was certainly intended to and does operate as a limitation upon the second option—that is, the option to file the lien within thirty days after the completion of the original contract, if there be any such contract. If there be no contract, then the lien claimants furnishing labor or materials are afforded full opportunity to preserve their remedy by lien by filing the same within thirty days after they have ceased to labor or to furnish materials.

The theory upon which those bestowing labor upon or furnishing materials to be used in the construction of a building, where the work is done or to be done by contract between the owner and a contractor, are afforded by the statute two different occasions upon which they, at their option, may file their liens may thus be explained: In the case of work done by or under contract, the contractor himself employs the labor and orders the materials essential to the completion of his contract, and, it may be added, is primarily liable for the labor bestowed upon and the materials furnished for the construction or repair of the building or other structure. It is safe to say that in such a case the contractor is required, in many instances, to rely upon the money he is to receive as the contract price with which to pay for the labor and materials employed by him in the execution of the contract, and it follows that, in such circumstances, he must obtain credit to enable him to carry out the terms of his contract. The contract may provide for the payment of the contract price in installments, of which it may be agreed that some shall not be paid until the

contract has been fully completed, or substantially so. The legislature, having this situation in view, very properly and wisely, therefore, took the pains to provide for such a contingency by giving to laborers and materialmen, in the case of work done by contract, the option of filing their liens within the time specified as well after the completion of the contract as after the cessation of labor or of the furnishing of materials, thus enabling them to extend the credit to the contractor, if they wish to do so, and at the same time enabling the contractor to go on with the completion of his contract without that embarrassment or handicap which might follow as against him from the filing of liens before the completion of the work. In such case, the laborers and materialmen would not be required to exercise constant watchfulness to ascertain precisely when the time for filing their liens would begin to run, for then they would know from the contract itself, which should be on file in the county recorder's office, about when it would be completed, or may rely for knowledge of that fact upon the notice of completion which the owner is required to file, in the case of a statutory as well as in that of an actual completion (*Boscus* v. *Waldmann*, 31 Cal. App. 245, 254, 255, [160 Pac. 180]), to preserve in himself the right to object if the lien is not filed within the statutory time.

The situation is entirely different where the work is not done by contract. The owner in such case is primarily responsible for the claims of laborers and materialmen furnishing the labor and the materials to carry on the work. Then in that case there may be no definite plans or definite time fixed for the completion of the work, with the result that the work may be extended over a long period of time to comport with the convenience of the owner. The work may be, in point of magnitude, of little consequence, and material for its purpose may be ordered and delivered but not put into the building or structure for months after its delivery, and thus, claimants in such a case, if they were required to wait until the filing of a notice of completion by the owner, would have to wait an indefinite time before they could file their liens, without prematurely doing so. Such lien claimants can, themselves, it is obvious, always know, independently and without the aid of extrinsic evidence or notice, when they have ceased to labor or to furnish materials, and thus more than other persons are in a position to know the date from which the time

within which they must file their liens, if they would enjoy the benefit of such protection, begins to run. They are not required to be incessantly on the alert and so watch the progress of the work for the purpose of ascertaining when it is completed.

But it is hardly necessary to proceed further in the discovery of reasons which justify the conclusion that in but one contingency are the laborers and materialmen at liberty, under the statute, to file their liens after the completion of the work. It may be added, however, that the initial language of section 1187 clearly and unquestionably provides for two different courses which the owner of land is at liberty to adopt for the erection or improvement of structures thereon, to wit: 1. Where the work of construction or repair is done under a contract between the owner of the land upon which the improvement is to be made and a contractor, in which case either the original or subcontractor employs the labor and orders the materials; 2. Where the owner, either by himself directly or by agent, presumptively or constructively, does the work and employs the labor and orders the materials; and that from this proposition it becomes the more clearly apparent that wherever the term "contract" is employed in the statute, it was intended to be so used and to be understood in the sense in which it is employed in section 1183, the initial section of the chapter upon the subject of liens. And that the sense in which that word or the phrase, "original contract," is used in the latter section is that of work to be done by or under a contract between the owner and a contractor is plainly evidenced by the provision contained in said section 1183 to the effect that the liens "in this chapter provided" shall not in the case of any claimants, other than the *contractor*, be limited, as to any amount, by any *contract price agreed upon between the contractor and the owner*, except," etc., the provision as to the effect of the filing of "such original contract" before the commencement of the work upon the rights of those performing labor thereon or furnishing materials thereunder, the provision for the filing of a bond with "such contract" in the office of the county recorder, the effect of which is, in addition to securing to lien claimants, other than the contractor, the payment of their liens, to restrict the right of recovery as against the owner to the "contract" price, and the provision that any change, alteration, or modification "of any such con-

tract between the owner and his contractor" shall not have the effect of releasing or exonerating any surety or sureties upon any bond given under this section. All these provisions, we say, unquestionably, refer and apply to cases where the work is done, not by the owner himself, either actually or constructively, but by or under contract between the owner and a contractor, and from this, as before declared, the proposition seems to be clearly deducible—indeed, so much so as to transfer it far beyond the realm of doubt—that wherever the word "contract" or the phrase "original contract" is thereafter used in the law, it must have been so employed in the sense in which section 1183 uses it, unless there is discernible from the statute itself some overruling reason for applying the term or the phrase in a different sense. No just reason has been shown and, after a painstaking consideration of the lien law in its entirety, none has occurred to us, supporting the contention of the appellant with respect to the sense in which the legislature intended the word "contract" as used in that part of section 1187 relating to the filing of notice by the owner of the completion of the work was to be understood and applied. Indeed, the construction above given section 1183 and the initial language of section 1187, about the correctness of which construction it seems to us there can be no doubt, is itself sufficient to negative the contention that the word "contract" as used in the provision relating to the filing of notice of completion by the owner is to be interpreted to mean the "building" or the "structure" or the "work," whatever may be its character, to be done. As pointed out, there is apparent no good or any reason why that word should be given such a meaning. To require the owner, in cases where he has himself, either actually or by presumption, done the work, to file a notice of completion would add nothing to the rights of lien claimants in such cases, it would benefit them in no way, it would afford them no better or greater or more advantageous opportunity to preserve their right to liens than by the provision that they may file their liens within thirty days after they have ceased to labor or to furnish materials. Besides, as already shown, the exercise of the second option provided for in a case where the work is done by contract could not affect the owner where he does the work himself as it does a contractor in the former case, for, while the provision may, as shown, help the contractor in certain indicated circumstances, and at the same time

afford ample protection to claimants, yet where the work is
done by the owner himself it can be of no just benefit to him,
since he must himself pay for the labor and materials em-
ployed in the work, and may proceed with the work according
to his own wish and convenience. He may, as before stated,
extend the work of construction over a long period of time—
in fact, indefinitely—or do it by piecemeal, if he is without
the means to press it on to completion as early or soon as ordi-
narily he might, and yet in such case he cannot suffer by rea-
son thereof as could a contractor, who is, ordinarily, bound to
complete his contract within a specified or reasonable time.

But there is another and, we think, a well-nigh conclusive
reply to the contention that the provision for the filing by the
owner of a notice of the completion of the contract applies to
the case where the work is not done under contract, and it is
this: The provision with respect to the filing of a notice of
completion as it read prior to the revision of the lien law by
the legislature of 1911, [Stats. 1911, p. 1313], was in the fol-
lowing language: "The owner of any property on which labor
has been bestowed or for which materials have been furnished
to be used in the construction, alteration, addition to or re-
pair, either in whole or in part, of any work mentioned in sec-
tion 1183 of this code, must, within ten days after the com-
pletion thereof, or within forty days after the cessation from
labor upon any unfinished contract, or upon any unfinished
building, improvement or structure, or the alteration, addi-
tion to or repair thereof, file for record . . . a notice setting
forth," etc. (See Stats. 1897, p. 202.) We have seen no
cases which have construed the section as it thus read prior to
1911, but undoubtedly the language quoted could reasonably
have been so construed as to have made it applicable to cases
where the work was not done by contract as well as those cases
where the work was done by contract, and it is most probably
true that, when so applying it, it was found to be so unneces-
sary—so impotent in the achievement of any useful purpose—
that the legislature of 1911, having so viewed it, *ex industria,*
changed it so as that it would read as it now exists. At any
rate, we can conceive of no stronger reason calling for the
amendment than that of avoiding the absurdity of requiring
the owner, where he has himself done the work, to file a notice
of completion when at the same time there exists a provision
which affords the laborer and materialman in such a case the

right of filing their liens within thirty days after they have ceased to labor or to furnish materials, an event produced by their own acts or conduct and which, therefore, they of necessity have actual knowledge of.

[2] It follows, of course, from the view of section 1187 above given, that only those whose rights would be affected by the filing of the notice of completion may invoke the estoppel provided for in said section when no such notice is filed. If, in other words, the provision as to the notice of completion applies only when there is a contract, then, obviously, the estoppel is applicable and may be invoked only when there is a contract. There being no contract in this case—that is, the buildings for which the plaintiff furnished materials not having been constructed by or under contract between the owner and a contractor but constructively by the owner himself— the provision of section 1187 as to the filing of notice of completion does not, as to the appellant, apply, and as an essential corollary of that proposition the estoppel provided for in said section does not apply and, therefore, cannot be invoked in this case. In a word, the plaintiff, by reason of the circumstances of this case, comes within that class of lien claimants who have available to them under the statute but a single course to pursue to preserve their remedy by lien, viz., to file their liens within thirty days after they have ceased to labor upon or furnish material for the work to be done.

The effect of the construction herein of the statute, as amended in 1911, is obviously not to impair in any way the rights of any claimants, but, on the contrary, it seems to us, is to make it fair and just to all lien claimants. And no discrimination can result from the statute as it is so construed. The statute deals with two general classes of cases, and as we construe it those of each class are treated alike. The contingency upon the happening of which a member of each class must act to preserve his rights is plainly pointed out and affords to every claimant full opportunity for protecting his rights under the statute. If our construction of section 1187 would lead to any other result, we would, of course, be compelled to hold, in the face of plain, ordinarily understandable words and language, that the legislature did not intend to say what the face of the language of the statute clearly and naturally implies and signifies. But, as we have shown, to give to all claimants their constitutional right to liens and at the same time give to own-

40 Cal. App.—10

ers just protection, there is no necessity for such a construction of the law established for the enforcement of liens as it exists at the present time. As declared, the law, as we here construe it, in no way curtails or qualifies or impairs the rights of any of the claimants of either class, but leaves all with equal rights, according to the several contingencies upon which they may preserve their right of lien, and affords them as well as the owners of property ample protection.

Accordingly, we conclude that the decision below is correct, and the judgment is, therefore, affirmed.

Buck, P. J., *pro tem.*, and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 28, 1919.

All the Justices concurred except Melvin, J., who was absent.